(25 Misc. Rep. 40.)

## SCHOOL BOARD OF BOROUGH OF BROOKLYN v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Special Term, Kings County.   October, 1898.)

1. MUNICIPAL CORPORATIONS—CHARTER OF NEW YORK—APPORTIONMENT OF GENERAL SCHOOL FUND.

The charter of the new city of New York (section 10) directs that in 1897 the several municipal corporations to be consolidated shall make their regular appropriations for 1898, and that when such appropriations pass under the administration of the new city, on January 1, 1898, they shall be used for its expenses for the year 1898, in such manner as the board of estimate and apportionment may determine, and that it shall be the duty of such board to apportion the funds to the various city departments so that they may be used for the objects for which they are raised.   Section 11 provides that the division of school funds into a special and general school fund in conformity with the new charter shall be postponed until July 1, 1898, and directs the board of estimate and apportionment on that day to divide the unexpended balance of school funds into such special and general fund for the year 1898, so that the schools thereafter be conducted on the system prescribed by such charter; and it further provides that such system shall go into "full effect" on July 1, 1898.   *Held*, that such scheme of division of the school funds applied to the year 1898, and the new system of school administration, including a requirement by City Charter, § 1065, that the board of education shall apportion the general school fund among the borough school boards upon the ratio of the number of teachers and aggregate days of attendance of pupils under such borough boards, was then in force.

2. SAME.

The provision of section 11, that the system of school administration prescribed by the charter should go into "full effect" upon July 1, 1898, is not nullified in respect to the division of the general school fund by the provisions of section 10, that the funds received from the superseded municipal corporations may be spent in 1898 "in such manner as the board of estimate and apportionment may determine," and that it shall be the duty of the board of estimate and apportionment to apportion the funds to the various city departments created by the new charter so that such funds shall be used, as nearly as may be possible, for the objects for which they were raised; there being no conflict between the provisions of the two sections.

Application by the school board of the borough of Brooklyn for a peremptory writ of mandamus against the board of education of the city of New York to require it to apportion the general school fund of the said city upon the ratio prescribed by section 1065 of the charter of the new city of New York.   Granted.

Ira Leo Bamberger, for the motion.
E. Ellery Anderson, opposed.

GAYNOR, J.   In the department of education there is a board of education for the entire city, and a school board in each of the boroughs of the city, except that the boroughs of Manhattan and the Bronx are united under one school board.   All moneys for school purposes in the city are to be apportioned and raised in two separate funds, called the special school fund and the general school fund. The former consists of moneys for the purchase of school sites, the erection and repair of buildings, the purchase of supplies, and the

like; the latter consists almost entirely of moneys for salaries of teachers and all other employés. The yearly budget as prepared by the board of estimate and apportionment and confirmed by the municipal assembly is required to exhibit each of these funds separated, and also to apportion the said special fund among the said boroughs; while the said general fund has to be raised in bulk, and afterwards apportioned among the said borough school boards by the board of education upon the ratio of the number of teachers and the aggregate number of days of attendance of pupils under each borough school board. The special fund is administered by the board of education; the general fund by the borough school boards as so apportioned among them by the board of education.

The foregoing is the financial system of the department of education. City Charter, §§ 1057–1065. It is easy to see its application. The yearly budget having been made up and confirmed, such budget will show the said two funds separated, viz., the special school fund and the general school fund, and will also exhibit a division of the special fund among the boroughs, but not of the general fund. It will remain for the board of education to divide the said general fund among the borough school boards upon the ratio above mentioned.

The case at bar has to do only with a question of such division among the borough school boards of the said general fund by the board of education. It is claimed that such scheme of division does not become operative under the charter until the appropriations of the budget now being made up for 1899 come to be used, viz., on January 1, 1899; in other words that it does not apply to the year 1898; and the present controversy is concerning the division of such general fund for the year 1898.

The new city came into existence on January 1, 1898. The moneys for the expenses of its government for the year 1898 were not appropriated by means of a budget made up by the board of estimate and apportionment and the municipal assembly. At their regular times in the year 1897 the several municipal corporations which were to be consolidated on January 1, 1898, to make the new city, made their regular appropriations and cast their regular annual taxes for the expenses of the coming year 1898 by direction of the charter for the new city which had already been passed (section 10), just as though such consolidation was not to take place. On January 1, 1898, when the new city came into being, these several appropriations passed under its administration, the charter directing them to be used for the expenses of the new city for the year 1898 "in such manner as the board of estimate and apportionment for that year may determine," and further providing by the next sentence that "it shall be the duty of the board of estimate and apportionment to apportion the said funds to the various city departments as created by this act, so that such funds shall be used as nearly as may be for the objects for which they were raised." Section 10. Under this provision it was of course the duty of the board of estimate and apportionment to apportion all of the school funds of 1898 to the department of education, and that was done. But by section 11 of the new charter the division of the said funds into the said special school fund and general

school fund, in conformity with the aforesaid established financial system, was postponed until July 1, 1898. That section provides that on July 1, 1898, the board of estimate and apportionment shall divide the residue, or unexpended balances, of such school funds into "the special school fund and the general school fund for the year 1898, so that the schools of the city may begin in the autumn of the year 1898 to be conducted upon the basis of this division of funds, and in general upon the system hereinafter prescribed by this act." That system I have exhibited at the outset of this opinion, and as has been seen it embraces a requirement that the board of education shall apportion the general school fund among the borough school boards upon the ratio of the number of teachers and aggregate days of attendance of pupils under such borough boards. And the said section 11 continues and concludes as follows, viz.:

"Up to July 1st, 1898, the school money shall be spent as raised, for all school purposes, by the various school boards respectively. It shall be the duty of the board of education as constituted under this act to make all appointments therein provided for, and to adopt the necessary by-laws at such time and in such manner, that the new system for the administration of the public schools of the city as provided by this act shall go into full effect on July 1st, 1898."

It would seem that this explicit provision that the new system should go into full effect on July 1, 1898, could not be made plainer.

The board of estimate and apportionment did on July 1, 1898, divide the said unexpended balances of school funds into such special and general school funds, but the board of education has neglected to make the apportionment of the said general school fund among the borough school boards, and the school board of the borough of Brooklyn applies for a peremptory writ of mandamus to require it to do so. The reason assigned for its failure to make such apportionment is, that when on July 1, 1898, the board of estimate and apportionment divided the unexpended balances of school funds into the said special and general school funds, as aforesaid, and as required by the said section 11 of the charter, it at the same time not only apportioned among the several boroughs the special fund thus constituted, but also assumed to and did apportion the said general fund among the said borough school boards. It so apportioned the said general fund by allotting to each borough school board what remained unexpended of the sum appropriated as aforesaid for school purposes in the territory of such borough in 1897. By this apportionment the school board of the borough of Brooklyn was allotted over $300,000 less than would be allotted to it under an apportionment of such general fund by the board of education upon the said ratio which it is required to adopt.

It seems to me that the said apportionment by the board of estimate and apportionment was without authority, and therefore a nullity. Section 11 of the charter, as has already been seen, specifically directed the board of estimate and apportionment to divide the unexpended balances of school funds into a special school fund and a general school fund on July 1, 1898, "so that the schools of the city may begin in the autumn of the year 1898 to be conducted upon the basis of this division of funds, and in general upon the system hereinafter

prescribed in this act"; and the words which follow these reiterate the purpose "that the new system for the administration of the public schools of the city as provided by this act, shall go into full effect on July 1st, 1898." An essential part of that system, as has been seen, is an apportionment of the general school fund among the borough school boards by the board of education upon the basis already mentioned.

It is contended that this explicit provision in section 11 to put the system of school administration prescribed by the charter into "full effect" upon and from July 1, 1898, is nullified in respect of such division of the general school fund by the board of education by the prior provision of section 10 already cited, viz., that the funds received from the superseded municipal corporations may be spent in 1898 "in such manner as the board of estimate and apportionment may determine," and that "it shall be the duty of the board of estimate and apportionment to apportion the said funds to the various city departments as created by this act, so that such funds shall be used as nearly as may be for the objects for which they were raised." I see no conflict between these provisions of sections 10 and 11. The broad words of section 10 that such funds may be used for the expenses of the city government in such manner as the board of estimate and apportionment may determine, are immediately limited by words making it the duty of the said board to apportion the said funds among the departments to be used as nearly as may be for the objects for which they were raised. And then comes section 11 with its further special directions to the said board in respect of the administration of that part of the said funds which was raised for school purposes. All of these provisions construed together by no means leave the said board free to determine the use of the said funds as it sees fit, as might be the case if the first part of the said provision of section 10 stood alone.

Only teachers who alone, or adding their time of service to that of their lineal predecessors, shall have "taught in the schools under the charge of the board during a term of not less than 32 weeks," are counted in ascertaining the number of teachers in the borough for the purpose of such division of the general school fund. Section 1065. As 32 weeks could not elapse from February 1, 1898, when the board of education and the borough school boards came into authority (section 1061), to July 1st, when the general fund was constituted, it is argued that there were no teachers fulfilling the requirement, and that therefore such division was not contemplated for 1898. But the limitation is not to teachers who have taught 32 weeks under the borough boards, but to teachers who have taught that length of time in the schools under the charge of the said boards. This relates back to and covers the time of the said schools under the government of the predecessors of the said boards.

It is said that as it would be unjust to the other boroughs to give to Brooklyn borough in 1898 more of the school funds than was raised in that borough in 1897, the makers of the charter and the legislature could not have meant such a thing. But it will be seen that section 901 was framed in anticipation of such inequalities in the financial

adjustments of 1898 in respect of the borough expenditures, and to prevent injustice resulting therefrom the excess which any borough gets in that year is to be cast back upon it by means of the budget and tax levy of 1899, and by the same means the case of any borough which gets less than it was entitled to is to be adjusted.

The motion is granted.